**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TRICIA JANETZKE,<br>on behalf of Plaintiff and the class<br>members described herein, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| OPICHI FUNDS LLC,<br>doing business as eLoanWarehouse.com;<br>LAC COURTE OREILLES<br>FINANCIAL SERVICES II, LLC;<br>DAVID JOHNSON;<br>KIRK MICHAEL CHEWNING;<br>CANE BAY PARTNERS VI, LLLP;<br>DIMENSION CREDIT (CAYMAN), L.P.;<br>STRATEGIC LINK CONSULTING, LP;<br>ESOTERIC VENTURES, LLC;<br>INFOTEL INTERNATIONAL LTD.;<br>M. MARK HIGH, LTD.;<br>KIM ANDERSON;<br>JAY CLARK;<br>and DOES 1-20, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No.: 1:23-cv-13823 |
| Defendants. | ) ) | |

**COMPLAINT – CLASS ACTION**

1.      Plaintiff Tricia Janetzke ("Plainitff") brings this action to secure redress from predatory and unlawful loans (such as Exhibits A-D) made by Defendants (a) Opichi Funds LLC, doing business as eLoanWarehouse.com, (b) David Johnson, (c) Kirk Michael Chewning, (d) Cane Bay Partners VI, LLLP, (e) Dimension Credit (Cayman), L.P., (f) Strategic Link Consulting, LP, (g) Esoteric Ventures, LLC, (h) InfoTel International Ltd., (i) M. Mark High, Ltd., (j) Kim Anderson, (k) Jay Clark, (l) LaCourte Oreilles Financial Services II, LLC and (m) Does 1-20.

2.      Plaintiff seeks a declaratory judgment that the loans are void and an injunction against their collection (Count I), damages pursuant to the Illinois Interest Act, 815 ILCS 205/6 (Count II), damages pursuant to the Illinois Predatory Loan Prevention Act, 815 ILCS 123/15-1-1 *et seq.*, and the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* (Count III – the Predatory Loan

-1-

Prevention Act provides that violations are a violation of the Illinois Consumer Fraud Act), and treble damages under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964, (Counts IV- VI).

## JURISDICTION AND VENUE

3.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331 (general federal question), 18 U.S.C. § 1964 (RICO), 28 U.S.C. § 1337 (interstate commerce), and 28 U.S.C. § 1367 (supplemental jurisdiction). Jurisdiction may also exist under 28 U.S.C. § 1332(d) (Class Action Fairness Act).

4.     This Court has personal jurisdiction over Defendants because they:

    a.     Knowingly participated in the making and collection of unlawful loans to Indiana residents. In similar actions against purported "tribal" lenders, courts have held that personal jurisdiction over the persons involved in making the loans exists in the state where the borrower obtained a loan via the Internet, and in which loan funds were disbursed via ACH transfer. *Gingras v. Rosette*, 5:15cv101, 2016 U.S. Dist. LEXIS 66833, 2016 WL 2932163, at *2-3, *9 (D. Vt. May 18, 2016)*, aff'd sub nom. Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019) (finding that tribal lending entity's contacts with Vermont "would have been sufficient to subject [the tribal entity] to personal jurisdiction in Vermont" for purposes of claims for violations of state and federal law, including state usury laws and RICO, where tribal entity operated a website that advertised loans in Vermont, sent emails and loan applications to Vermont consumers and transferred loan principal to consumers' Vermont bank accounts); *Duggan v. Martorello*, 18cv12277, 2022 U.S. Dist. LEXIS 58075, at *33-34, 2022 WL 952183 (D. Mass. Mar. 30, 2022); *Dawkins v. Blue Dart Ventures*, 8:20cv2353, 2021 U.S. Dist. LEXIS 130297 (M.D. Fla. Apr. 1, 2021).

    b.     Selected which states to offer loans in, thereby targeting those states. *Illinois v. Hemi Group*, *LLC,* 622 F.3d 754, 760 (7th Cir. 2010).

5.     Venue is proper because acts to obtain and collect the loans impacted Plaintiff in Illinois.

6.  Article III is satisfied because actions for statutory damages and invalidation of loans for usury were entertained by the courts of England and the United States in 1787. English Usury Act of 1713, 12 Anne Session 2 c. 17. All thirteen original American states replaced the English usury statutes with their own usury laws between 1641 and 1791. Christopher L. Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92 Minnesota Law Review 1110, 1116-18 (April 2008), summarizing statutes allowing 5% to 8% interest.

## PARTIES

### Plaintiff

7.  Plaintiff Tricia Janetzke is a resident of Chicago, Illinois.

### Defendants

8.  Defendant Opichi Funds LLC, doing business as eLoanWarehouse.com claims on loan documents (Exhibit A) to be an entity organized as "an economic development arm and instrumentality of, and wholly-owned and controlled by, the Lac Courte Oreilles Band of Lake Superior Chippewa Indians ('the Tribe'), a federally-recognized sovereign American Indian Tribe" located in northern Wisconsin. It claims to operate from PO Box 1753, Hayward, WI 54843.

9.  Defendant Opichi Funds LLC, doing business as eLoanWarehouse.com is nominally owned by Defendant Lac Courte Oreilles Financial Services II, LLC, an entity chartered by the Tribe.

10.  In fact, the lending business conducted through www.eLoanWarehouse.com is beneficially owned and conducted by Defendants David Johnson ("Johnson") and Kirk Michael Chewning ("Chewning") through a web of interconnected companies, culminating with Defendant Cane Bay Partners VI, LLLP.

11.  Defendant David Johnson is an individual who resides in the U.S. Virgin Islands. He may be found at 2205 Church St., Ste. 305, Christiansted, VI 00820.

12.  Defendant Kirk Michael Chewning is an individual who may be found at 574

-3-

Vinings Springs Dr. SE 12, Mableton, GA 30126-5995, or PO Box 24313, Christiansted, VI 00824-0313.

13.     Defendant Cane Bay Partners VI, LLLP, is a limited liability limited partnership organized under the law of the U.S. Virgin Islands. Its address is 17 Church Street, Ste. 305, St. Croix, U.S. Virgin Islands 00820, or 2205 Church Street, Suite 305, Christiansted, U.S. Virgin Islands 00820. Its registered agent and office is Alexander Hamilton Trust Co., LLC, 53a Company Street, Christiansted, U.S. Virgin Islands 00820. Its sole business is the management and operation of online high-interest lenders. It is co-owned and controlled by Kirk Chewning and David Johnson.

14.     Defendant Dimension Credit (Cayman), L.P. is a limited partnership entity based in the Cayman Islands. It may be served c/o Vector Capital Corporation, att'n Roy Kelvin, One Market Street, Steuart Tower, 23d floor, San Francisco, CA 94105. On information and belief, it is owned and controlled, directly or indirectly, by Kirk Chewning.

15.     Defendant Strategic Link Consulting, LP, is a limited partnership based in the state of Texas. It is an affiliate of Cane Bay Partners VI, LLLP and controlled by Kirk Chewning. Its registered agent and office is National Registered Agents, Inc., 1999 Bryan St., Ste. 900, Dallas, TX 75201.

16.     Defendant Esoteric Ventures, LLC is a limited liability company organized under the law of the state of Utah. It is an affiliate of Cane Bay Partners VI, LLLP and under the control of Kirk Chewning. It may be served at 2015 Vaughn Road NW, Suite 575, Kennesaw, GA 30144, att'n Kim Anderson, chief executive officer. Its registered agent and office is National Registered Agents, Inc., 1108 E. South Union Avenue, Midvale, UT 84047.

17.     Defendant InfoTel International Ltd. is a company based in Belize. It does business as Voyse International. It is an affiliate of Cane Bay Partners VI, LLLP under the control of Kirk Chewning. It may be served at 2015 Vaughn Road NW, Suite 575, Kennesaw, GA 30144, att'n Kim Anderson, chief executive officer.

18.     Defendant M. Mark High, Ltd. is a company based in Belize. It is an affiliate of

-4-

Cane Bay Partners VI, LLLP under the control of Kirk Chewning. It may be served att'n Dean Molina, 5570 Princess Margaret Drive, Belize City, Belize. Its registered agent and office is Business Basics VI, LLC, Royal Palms Professional Bldg., 9053 Estate Thomas, Suite 101, Charlotte Amalie, U.S. Virgin Islands.

19.     Defendant Jay Clark is an individual residing in Georgia. He serves as chief of staff of Cane Bay Partners VI, LLLP and is general manager and chief financial officer of Defendant Strategic Link. Defendant Clark directed the acts of Cane Bay Partners VI, LLLP complained of herein.

20.     Defendant Kim Anderson is an individual residing in Georgia. Anderson may be found at 2015 Vaughn Road NW, Suite 575, Kennesaw, GA 30144. Anderson is chief executive officer for several of the entities listed above. Anderson directed the acts of those entities complained of herein.

21.     Defendants Does 1-20 are other persons and entities involved in the lending scheme described herein. Plaintiff does not know who they are.

22.     At no time did any of the Defendants have any type of lending license from the State of Illinois.

23.     At no time did any of the Defendants operate under a bank or credit union charter.

## FACTS

24.      Prior to 2013, non-Tribe members David Johnson, Kirk Chewning, Kim Anderson, and Jay Clark entered into an arrangement to conduct high-interest Internet lending activities under the purported auspices of the Tribe.

25.     The activities were conducted through companies which they owned and controlled – Cane Bay Partners VI, LLLP, Dimension Credit (Cayman), L.P., Strategic Link Consulting, LP, Esoteric Ventures, LLC, InfoTel International Ltd., and M. Mark High, Ltd.

26.     According to the Tribe, "Kirk Chewning, through Cane Bay and Dimension Credit, orchestrated a scheme to exercise de facto control over the Tribe's lending businesses to facilitate an

illegal lending enterprise and charge consumers up to 730% annual interest for loan[s]. Defendants, playing on the Tribe's desperate desire to diversify its limited economy by creating new opportunities and governmental support for its people, held themselves out as industry experts and successful businessmen willing to consult on the development of, and provide services for, the Tribe's lending venture. However, unbeknownst to the Tribe, Chewning and Cane Bay really sought the framework of a thinly-veiled, carefully structured "rent-a-tribe" scheme — a business that was tribally owned and operated on paper, but in reality, merely a front for non-tribal companies and individuals to continue their illegal offshore operations and skim money from the Tribe." (*Lac Courte Oreilles Financial Services, LLC v. Cane Bay Partners VI, LLLP*, 3:22cv344 (W.D.Wisc.), at par. 2.). The complaint is attached hereto as Exhibit E.

      27.    In 2013, Chewning met with the governing body of the Tribe and negotiated a deal for the servicing and operation of a high-interest Internet lending operation. The initial lender was organized as Oasis Funds, LLC.

      28.    Chewning represented that Cane Bay and its affiliates, Strategic Link, Esoteric, InfoTel, and M. Mark High, Ltd. were a full-service suite that would provide marketing, underwriting, risk management, a call center, payment, and credit for the venture. The credit would be provided by Dimension Credit.

      29.    Financing from Dimension Credit was conditioned on the use of Cane Bay and its affiliates as servicer. Dimension Credit had a security interest in all assets of the lending operation. Originally, these Defendants formed Hummingbird Funds, LLC d/b/a Blue Trust Loans as an entity chartered by the Tribe.

      30.    The Tribe contracted with Cane Bay to provide management consulting, service provider analysis, and risk management services to its lending operations. Cane Bay in turn has Defendants Dimension Credit (Cayman), L.P., Strategic Link Consulting, LP, Esoteric Ventures, LLC, InfoTel International Ltd., and M. Mark High, Ltd. provide the necessary services to make, service and collect the loans. The Credit Agreement between Defendant Dimension Credit

(Cayman), L.P. and Hummingbird Funds is attached hereto as <u>Exhibit F</u>. The Security and Pledge Agreements between Dimension Credit (Cayman), L.P. and Hummingbird Funds are attached hereto as <u>Exhibits G & H</u>.

31.     About early 2022, the business was shifted to Opichi Funds LLC d/b/a eLoanWarehouse.com.

32.     Opichi Funds LLC d/b/a eLoanWarehouse.com has continued to extend credit to consumers at interest rates exceeding 200%.

33.     The Tribe has little meaningful involvement in the lending business.

34.     Furthermore, the principal economic benefit of the activities of eLoanWarehouse.com is received by non-Native American persons.

35.     On information and belief, the Tribe receives less than 10% of the revenues generated by the lending activities complained of herein.

36.     On information and belief, the funds received by the Tribe are routed through Defendant Opichi Funds LLC doing business as eLoanWarehouse.com and Defendant Lac Courte Oreilles Financial Services II, LLC.

37.     eLoanWarehouse.com does business in Illinois over the Internet, via text message, via Automated Clearing House transactions, and over the telephone.

38.     Defendants Cane Bay Partners VI, LLLP, Johnson, and Chewning actually run the lending business conducted via www.eLoanWarehouse.com, directly or through other entities they own. They secure funding, design websites, market the business, underwrite and approve loans, and performing all other necessary functions.

## FACTS RELATING TO LOANS TO PLAINTIFF

39.     On or about February 3, 2023, Plaintiff obtained a loan from "eLoanWarehouse.com" via the Internet (<u>Exhibit A</u>). The disclosed annual percentage rate is 536.34%. Plaintiff paid this loan in full, including interest payments.

40.     On or about March 30, 2023, Plaintiff obtained a loan from

"eLoanWarehouse.com" via the Internet (Exhibit B). The disclosed annual percentage rate is 572.16%. Plaintiff paid this loan in full, including interest payments.

41. On or about May 5, 2023, Plaintiff obtained a loan from "eLoanWarehouse.com" via the Internet (Exhibit C). The disclosed annual percentage rate is 625.94%. Plaintiff paid this loan in full, including interest payments.

42. May 19, 2023, Plaintiff obtained a "line of credit" from "eLoanWarehouse.com" via the Internet (Exhibit D). The disclosed annual percentage rate is 338.75%.[1] The "line of credit" has not been paid in full.

43. The credit was obtained for personal, family or household purposes and not for business purposes.

44. Exhibits A-D are standard form documents used by "eLoanWarehouse.com" on a regular basis.

45. Defendants regularly make loans to individuals in Illinois at such rates.

46. The loans are made entirely by Internet.

47. The availability of the loans was made known by Internet advertising. (Exhibit I)

48. Applications were submitted by Internet.

49. Loan funds were disbursed by electronic transfer to the borrowers' accounts in Illinois.

50. The loans were to be repaid by ACH debit of the borrowers' accounts in Illinois.

51. Plaintiff did not set foot on the Tribe's reservation in connection with the loans.

52. Defendants have contacted Plaintiff for the purpose of collecting the loans.

53. Defendants sought out Illinois residents for such loans.

---

[1] The loans (Exhibits A-C) and the "line of credit" (Exhibit D) are collectively referred to as "loans."

## ILLINOIS PROHIBITIONS ON PREDATORY LOANS

54.     Effective March 23, 2021, the Illinois Predatory Loan Prevention Act made it unlawful for anyone other than a bank to make loans to Illinois residents at annual percentage rates in excess of 36%. 815 ILCS 123/15-1-1 *et seq.* "Any loan made in violation of this Act is null and void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan." 815 ILCS 123/15-5-10.

55.     Under 815 ILCS 123/15-10-5(b), "[a]ny violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act."

56.     In addition, it is unlawful for anyone who does not have a bank or credit union charter or a consumer lending license issued by the Illinois Department of Financial and Professional Regulation to make loans at more than 9% interest. 815 ILCS 122/1-15, 4-5; 205 ILCS 670/1.

57.     Any loans to Illinois residents at more than 9% that are made by unlicensed persons are void and unenforceable. 205 ILCS 670/20(d) ("Notwithstanding any other provision of this Section, if any person who does not have a license issued under this [Consumer Instalment Loan] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan."); 815 ILCS 122/4-10(h) ("(h) Notwithstanding any other provision of this Section, if a lender who does not have a license issued under this [Payday Loan Reform] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the lender who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan.").

58.     Loans made by an unlicensed lender to an Illinois resident at an interest rate exceeding 9% violate the Interest Act, 815 ILCS 205/4, and are subject to statutory damages under 815 ILCS 205/6.

59. Illinois' criminal usury statute provides that the making of a loan by an unlicensed person at more than 20% interest is a felony. 720 ILCS 5/17-59 (formerly 720 ILCS 5/39-1 *et seq*). It applies to a person who "while either within or outside the State, by his own conduct or that of another for which he is legally accountable," engages in conduct that amounts to an offense if "the offense is committed either wholly or partly within the State." 720 ILCS 5/1-5.

60. Contracts made in violation of licensing requirements intended to protect the public, or in violation of criminal laws imposing substantial penalties, are void. *Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.*, 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005). Neither choice of law clauses or other contractual devices can be used to avoid invalidation of loans made at criminally usurious rates. *Madden v. Midland Funding, LLC*, 11cv8149, 2017 WL 758518, at *11 (S.D.N.Y. Feb. 27, 2017) ("That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."); *MacDonald v. CashCall, Inc.*, 16cv2781, 2017 WL 1536427, *7 (D.N.J., April 28, 2017).

61. The Illinois Department of Financial and Professional Regulation has repeatedly brought cases against unlicensed out of state tribal and other lenders that make loans via the Internet or similar means to Illinois residents in Illinois. *E.g., In the Matter of Red Leaf Ventures, LLC,* No. 12 CC 569; *In the Matter of Money Mutual, LLC*, No. 12 CC 408; *In the Matter of Hammock Credit Services*, No. 12 CC 581; *In the Matter of Makes Cents, Inc., d/b/a Maxlend*, No. 17 CC 133.

## RENT-A-TRIBE SCHEMES

62. In an attempt to evade prosecution under usury laws of states like Illinois, non-tribal owners of online payday lending businesses frequently engage in a business model commonly referred to as a "rent-a-tribe" scheme.

63. Here, and in such schemes, non-tribal payday lenders create an elaborate charade claiming their non-tribal businesses are owned and operated by Native American tribes.

64. The illegal payday loans are then made in the name of a Native American tribal business entity which purport to be shielded from state and federal laws prohibiting usury due to

-10-

tribal sovereign immunity. However, the tribal lending entity is simply a facade for an illegal lending scheme; all substantive aspects of the payday lending operation – funding, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections – are performed by individuals and entities that are unaffiliated with the tribe.

65.     In exchange for use of the tribe's name, the beneficial owner of the payday lending scheme pays the cooperating tribe a fraction of the revenues generated. While the percentage varies from scheme-to-scheme, the number is almost always in the single digits.

66.     However, an entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

67.     To determine if a particular entity is entitled to sovereign immunity, the majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough* at 1183, 1187-88.

68.     These so-called "tribal lenders" usually do not survive scrutiny when examined closely, since virtually all business functions occur far from tribal land, by non-tribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

69.     Where non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes and, therefore, are not shielded by sovereign immunity.

70.     Further, sovereign immunity, even if legitimately invoked, still does not turn an

-11-

otherwise illegal loan into a legal one. *See, e.g., United States v. Neff,* 787 F. App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

71.    Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on fourteen felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.,* No. 1:16-cr-00091-PKC (S.D.N.Y). The conviction was affirmed in *United States v. Grote,* 961 F.3d 105 (2d Cir. 2020).

72.    The excessive interest charges imposed by Defendants were intentional.

## COUNT I - DECLARATORY AND INJUNCTIVE
## RELIEF AGAINST ILLEGAL CONDUCT

73.    Plaintiff incorporates paragraphs 1-72.

74.    This claim is against all Defendants.

75.    There is a controversy between Plaintiff and the class, on the one hand, and Defendants, on the other, as to whether Plaintiff must repay the outstanding loan made to her (Exhibit D, in Plaintiff's case).

76.    Declaratory relief will resolve such controversy.

77.    An injunction is necessary to prevent Defendants from taking any action to collect the void debts.

## CLASS ALLEGATIONS

78.    Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(2).

79.    The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of "eLoanWarehouse.com" at more than 9% interest (c) which loan has not

been paid in full.

80.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

81.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

82.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

83.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

84.     Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

85.     Defendant has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate.

86.     The class is entitled to a declaration that Defendants are not entitled to collect on the loans described, an injunction against any further collection efforts by Defendants, and restitution of all such amounts collected by Defendants.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

          i.      Injunctive relief;

          ii.     Declaratory relief;

          iii.    Restitution of all amounts collected on the loans from members of the class;

          iv.    Costs of suit; and

v.    Such other and further relief as the Court deems proper.

## COUNT II – ILLINOIS INTEREST ACT

87.    Plaintiff incorporates paragraphs 1-72.

88.    This claim is against all Defendants.

89.    Defendants contracted for and collected loans at more than 9% interest from Plaintiff and the class members, in violation of 815 ILCS 205/4.

90.    Plaintiff and the class members are entitled to statutory damages under 815 ILCS 205/6.

## CLASS ALLEGATIONS

91.    Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

92.    The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of "eLoanWarehouse.com" at more than 9% interest (c) which is outstanding or was paid in full on or after a date two years prior to the filing of this action.

93.    Plaintiff may alter the class definition to conform to developments in the case and discovery.

94.    The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

95.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

96.    Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

97.    Plaintiff's claim is typical of the claims of the class members. All are based on the

same factual and legal theories.

98. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i. Damages as provided in 815 ILCS 205/6.

    ii. Attorney's fees, litigation expenses and costs of suit; and

    iii. Such other and further relief as the Court deems proper.

## COUNT III – PREDATORY LOAN PREVENTION ACT AND ILLINOIS CONSUMER FRAUD ACT

99. Plaintiff incorporates paragraphs 1-72.

100. This claim is against all Defendants.

101. Defendants contracted for and collected loans prohibited by the Illinois Predatory Loan Prevention Act.

102. Violation of the Predatory Loan Prevention Act is a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.*

## CLASS ALLEGATIONS

103. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

104. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of "eLoanWarehouse.com" at more than 36% interest (c) or or after March 23, 2021.

105. Plaintiff may alter the class definition to conform to developments in the case and discovery.

106. The class is so numerous that joinder of all members is not practicable. On

-15-

information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

107.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

108.    Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

109.    Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

110.    A class action is superior for the fair and efficient adjudication of this matter, in that:

        a.    Individual actions are not economically feasible.

        b.    Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

        i.    Compensatory damages;

        ii.    Punitive damages;

        iii.    Attorney's fees, litigation expenses and costs of suit; and

        iv.    Such other and further relief as the Court deems proper.

## COUNT IV – RICO

111.    Plaintiff incorporates paragraphs 1-72.

112.    This claim is against Johnson, Chewning, Cane Bay Partners VI, LLLP, Dimension Credit (Cayman), L.P., Strategic Link Consulting, LP, Esoteric Ventures, LLC, InfoTel International Ltd., and M. Mark High, Ltd., Kim Anderson, and Jay Clark, each of which is a RICO "person."

113.    All loans made in the name of "eLoanWarehouse.com" to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws

relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (9%).

114. The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

115. eLoanWarehouse.com is an enterprise affecting interstate commerce, in that it is located outside of Illinois and makes loans to Illinois residents via the Internet.

116. The Defendants named herein are associated with this enterprise, as set forth above, in connection with the making and collection of loans to Illinois residents.

117. Defendants conducted or participated in the conduct of the affairs of "eLoanWarehouse.com" through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. § 1962(c).

118. Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

119. Plaintiff brings this claim on behalf of a class.

120. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of "eLoanWarehouse.com" at more than 18% interest (c) which loan was made on or after a date four years prior to the filing of this action.

121. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

122. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

      a.      Whether the loans at issue are "unlawful debts" as defined in RICO.

      b.      Whether "eLoanWarehouse.com" is an "enterprise."

      c.      Whether Defendants are associated with "eLoanWarehouse.com."

      d.      Whether Defendants conducted or participated in the affairs of

"eLoanWarehouse.com" through a pattern of making and collecting unlawful loans.

123. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

124. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

125. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i. Treble damages;

    ii. Attorney's fees, litigation expenses and costs of suit; and

    iii. Such other or further relief as the Court deems proper.

## COUNT V – RICO

126. Plaintiff incorporates paragraphs 1-72.

127. This claim is against Johnson and Chewning, who are the RICO "persons."

128. All loans made in the name of "eLoanWarehouse.com" to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (9%).

129. The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

130. eLoanWarehouse.com and Cane Bay Partners VI, LLLP, constitute an association in fact enterprise, existing for the purpose of making high-interest loans.

131. The association in fact enterprise affects interstate commerce, in that it has physical locations outside of Illinois and makes loans to Illinois residents via the Internet.

132.     Defendants Johnson and Chewning are associated with the enterprise, in that they direct and control its lending activities.

133.     Defendant Johnson and Chewning conducted or participated in the conduct of the affairs of the association in fact enterprise through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. § 1962(c).

134.     Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

135.     Plaintiff brings this claim on behalf of a class.

136.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of "eLoanWarehouse.com" at more than 18% interest (c) which loan was made on or after a date four years prior to the filing of this action.

137.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

138.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

      a.     Whether the loans at issue are "unlawful debts" as defined in RICO.

      b.     Whether "eLoanWarehouse.com" and Cane Bay Partners VI, LLLP, constitute an association in fact "enterprise."

      c.     Whether Defendants are associated with the enterprise.

      d.     Whether Defendants conducted or participated in the affairs of the enterprise through a pattern of making and collecting unlawful loans.

139.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

140.     Plaintiff's claim is typical of the claims of the class members. All are based on the

-19-

same factual and legal theories.

141.    A class action is superior for the fair and efficient adjudication of this matter, in that:

  a. Individual actions are not economically feasible.

  b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

  i. Treble damages;

  ii. Attorney's fees, litigation expenses and costs of suit; and

  iii. Such other or further relief as the Court deems proper.

## COUNT VI – RICO

142.    Plaintiff incorporates paragraphs 1-72.

143.    This claim is against Johnson and Chewning, who are the RICO "persons."

144.    All loans made in the name of "eLoanWarehouse.com" to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (9%).

145.    The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

146.    Cane Bay Partners VI, LLLP, is an enterprise, in that it is duly organized limited partnership entity.

147.    The enterprise affects interstate commerce, in that it has physical locations outside of Illinois and directs the making of loans to Illinois residents via the Internet.

148.    Defendants Johnson and Chewning are associated with the enterprise, in that they are its managers and direct and control its lending activities.

149.    Defendants Johnson and Chewning conducted or participated in the conduct of the affairs of the enterprise through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. § 1962(c).

150. Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

151. Plaintiff brings this claim on behalf of a class.

152. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of "eLoanWarehouse.com" at more than 18% interest (c) which loan was made on or after a date four years prior to the filing of this action.

153. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

154. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

  a. Whether the loans at issue are "unlawful debts" as defined in RICO.

  b. Whether Cane Bay Partners VI, LLLP, is an "enterprise."

  c. Whether Defendants are associated with the enterprise.

  d. Whether Defendants conducted or participated in the affairs of the enterprise through a pattern of making and collecting unlawful loans.

155. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

156. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

157. A class action is superior for the fair and efficient adjudication of this matter, in that:

  a. Individual actions are not economically feasible.

  b. Members of the class are likely to be unaware of their rights.

-21-

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

        i.       Treble damages;

        ii.      Attorney's fees, litigation expenses and costs of suit; and

        iii.     Such other or further relief as the Court deems proper.


                        */s/ Daniel A. Edelman*
                        Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 6207473)
Matthew J. Goldstein (ARDC 6339033)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

## JURY DEMAND

Plaintiff demands trial by jury.

/s/ Daniel A. Edelman
Daniel A. Edelman

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.


*/s/ Daniel A. Edelman*
Daniel A. Edelman

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that each Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, class members, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely relevant to the litigation of this claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

*/s/ Daniel A. Edelman*
Daniel A. Edelman